**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

-----------------------------------------------------------------x

UNITED STATES OF AMERICA

       *Plaintiff*,                      Case No. 2:16-CR-218-002

       - v. -

ALLEN WOODS,

       *Defendant*.

-----------------------------------------------------------------x

# REPLY IN SUPPORT OF MOTION FOR SENTENCE REDUCTION
## PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Evan K. Jacobs (PA ID 314126)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
evan.jacobs@morganlewis.com

I.  **ARGUMENT**

A. **Mr. Woods's Family Circumstances Constitute Extraordinary and Compelling Reasons and Counsel in Favor of His Compassionate Release.**

There are extraordinary and compelling reasons to reduce Mr. Woods's sentence under USCC § 1B1.13(b)(3). In opposing Mr. Woods's Motion for Compassionate Release (the "Motion"), the Government contends that (1) Mr. Woods has not adequately shown that his son, Allen Jr.'s mother is incapacitated, and (2) that because Mr. Woods has a large family who has expressed their support for his release, this necessarily means that there is an individual among them who is willing and able to become a full time caregiver to a 16-year-old teenage boy, and that this individual could better care for Allen Jr. than Mr. Woods could.[1]  *See* Government's Response in Opposition to Defendant's Motion to Reduce Sentence (Dkt. 1200) ("Opp. Br.") at 11-15.

First, the Government mistakenly asserts that Mr. Woods did not adequately allege that Allen Jr.'s mother is incapacitated.  The relevant guidelines contain no such requirement.  Rather, the portion of the guidelines the Government references looks to the "death or incapacitation of *the caregiver* of the defendant's minor child." USSC § 1B1.13(b)(3)(A). As explained in the underlying Motion, Mr. Woods had sole custody of Allen Jr. even prior to his incarceration and Allen Jr.'s mother suffers from severe, poorly managed schizophrenia and, importantly, has not

---

[1] In addition, the Government contends that Mr. Woods's medical conditions do not rise to the requisite seriousness to support his release and to conclude that "[t]he care [Mr. Woods] is receiving adequately addresses his medical concerns." Opp. at 11.  Mr. Woods stands on the arguments in his Motion. The Motion details Mr. Woods's experience being denied appropriate care or denied care altogether at USP Hazelton. Mot. at 4, 11. Mr. Woods's medical conditions continue to make his daily functioning within prison extremely difficult, *id.* at 4-5, and maintains that this constitutes an additional extraordinary and compelling reason justifying his release as set forth in the Motion.

1

been, is not, and will not be, a caregiver to Allen Jr. Simply put, she plays no role in Allen Jr.'s life. Thus, Allen Jr.'s mother is not "the caregiver" to which the analysis should apply. The analysis is more appropriately applied to Mr. Woods's wife, who was caring for Allen Jr. and acting as his mother, for all intents and purposes, up until her recent tragic passing in a car accident, as explained in the Motion and emphasized again throughout Mr. Woods's letters of support and other supporting attachments. *See, e.g.,* Mot. at 1, 17-18; Dkt. 1199-2 (Letters of Support) at 10 ("Just a few years ago [Allen Jr.] lost his mother because of a tragic accident."), 14 ("[Allen Jr.] deserves his father's undivided attention, especially because the young man['s] mother has passed away due to a tragic car accident"), 16 ("I'm sure you are aware that Allen Jr. lost his mother to an awful accident involving a hit and run."); Dkt. 1199-4 (Saundra Lynne Glass Obituary) (noting that Ms. Glass "leaves to cherish her memory her two children, Erin Glass and Allen Woods, Jr."). Since then, Allen Jr. has been passed around among family members who are unable to fully care for him, and most recently has been living with his stepsister, who is no longer able to keep him in her household. *See, e.g.,* Mot. at 17; Erin Glass Letter of Support.

The Government then correctly concedes that Mr. Woods need not be his son's *only* caregiver to be entitled to consideration based on family circumstances. Opp. Br. at 14 ("[W]hen the caregiver for the inmate's child is incapacitated, the defendant need not show that he is the only available caretaker." (citing *United States v. Smith*, 2024 WL 4556521, at *4 (D. Nev. Oct. 22, 2024) (unlike the other provisions related to family circumstances, the provision for consideration where the caregiver of the defendant's child is incapacitated does not require a showing that there are no alternative caregivers))); *see also United States v. Dawkins*, No. CR 08-412, 2021 WL 1946662, at *3 n.6 (W.D. Pa. May 14, 2021) ("The Government also argues that a defendant must be the only available caregiver for his child(ren), however, the Court rejects the

2

proposed only-available-caregiver requirement. [The applicable guideline] does not require a defendant prove he is the only available caregiver for his child(ren).").

Despite this concession and the clear case law establishing the same, the Government suggests that Mr. Woods must show that there are no other caregivers available to Allen Jr. Even so, Mr. Woods's Motion and supporting attachments thereto do set forth facts which support a finding that Mr. Woods is by far the best – if not the only – viable caretaker for Allen Jr. *See, e.g.,* Mot. at 17 (explaining that Allen Jr.'s current housing situation is no longer tenable); Dkt. 1199-2 at 8 (Erin Glass Letter of Support) ("I wanted to let you know that I am unable to care for Allen Jr. anymore"); Dkt. 1199-2 at 10-11 (Mr. Woods's niece's Letter of Support) ("Due to the present circumstances, [Allen Jr.] is being passed from one family member's home to another."); Dkt. 1199-3 (Mr. Woods's letter to the Court) (explaining that "Allen is still presently being passed around to different family member houses").

The Court should not lend credence to the Government's assertion that surely, "ample assistance is available" for Allen Jr, because Mr. Woods "comes from 'a huge family . . . who all support and care about him.'" Opp. Br. at 14. Of course, a caring family says nothing of the ability to take in and parent a young teenage boy. Indeed, the Government appears to conflate "resources" and "shelter" with caregiving. *Id.* ("there is no suggestion that Woods' son is at a real risk of being without resources or shelter"). Not only is this proposition divorced from the considerations of the guidelines, which say nothing of "resources" or "shelter" – it is likewise devoid of any appreciation for what the <u>caregiving</u> of a child requires, i.e., decidedly more than mere resources and shelter.

Moreover, the Government asserts that Mr. Woods has submitted that no family member can continue to house his son, and "in the same breath" represented that upon release, he and his son could live with Mr. Woods's sister. *Id*. The Government misunderstands the record, and again

3

conflates merely sheltering a child with actual caregiving. First, the Motion explains (and the attached letters reiterate) that Allen Jr. will no longer be able to live with Mr. Woods's stepdaughter, Erin, due to her increasing family responsibilities, and that Allen Jr. is thus "in danger of being placed in a group home environment because his relatives cannot *care for him*." Mot. at 17 (emphasis added); *see also* Erin Glass Letter of Support. The Motion goes on to explain that, if released, Mr. Woods's sister, Regina Woods, a real estate agent, has committed to *securing housing* for Mr. Woods and Allen Jr., *e.g.*, Mot. at 2, 18, 27 – not that "he and his son can live with [Regina]," Opp. Br. at 14. The Motion further explicitly states that Mr. Woods's "aging sister" has "a family of her own and no capacity to care for Allen Jr." Mot. at 2. Thus, Regina has committed to leveraging her resources as a real estate agent to provide housing for Mr. Woods and Allen Jr., but even had she represented that she could house them herself, this would still say nothing of her capacity to *care for* Allen Jr. Contrary to the Government's stance, this is a straightforward concept and not a proposition "at odds with itself." Opp. Br. at 14.

### B. Mr. Woods Will Not Be a Danger When Released, and the § 3553(a) Factors Weigh in Favor of Release.

Mr. Woods will not pose a danger to the community upon release, and the Government's limited arguments to the contrary do not address particular circumstances that make Mr. Woods a minimal threat. *See id.* at 18.

First, the 17 letters of support that Mr. Woods has provided to the Court are a testament to the strong circle of friends and loved ones who will support him every step of the way as he re-enters the community and remains a law-abiding citizen. Further, Mr. Woods possesses an

impressive disciplinary history reflecting an almost-perfect compliance with BOP regulations, *id*. at 5, which has contributed to his "Low" PATTERN assessment, Mot. at 30.[2]

Moreover, while Mr. Woods's past prior to the current underlying conviction is certainly imperfect, it does not warrant significant weight in the present analysis. The conviction for which Mr. Woods is currently incarcerated, and that should be the focus of the analysis here, is related to marijuana.[3] However, even recognizing that Mr. Woods's criminal history includes additional crimes from over 30 years ago when he was in his late 20s and early 30s, the focus of the analysis is properly on Mr. Woods's post-offense developments, and far less on his prior conduct. In *Pepper v. United States,* the Supreme Court explained that review of 18 U.S.C. § 3553(a) factors must consider "the most up-to-date picture" of the defendant's "history and characteristics" including evidence of rehabilitation. 562 U.S. 476, 491-92 (2011). The Court reiterated this in *Concepcion v. United States*, stating that "[t]here is a longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her as an 'individual.'" 597 U.S. 481, 486 (2022). The Court went on to say that

---

[2] To the extent the Government would rely on Mr. Woods's minor disciplinary record to argue he is not rehabilitated, or Mr. Woods respectfully submits that these incidents are not worthy of consideration in the Court's analysis. Mr. Woods's first incident in 2019 was incorrectly recorded as a refusal to work. According to Mr. Woods, he requested to attend his religious service as usual and the prison officials refused to allow him to do so. In addition, Mr. Woods submits that the second incident, in October 2024, was also incorrectly recorded as possessing unauthorized documents. Mr. Woods contends that he merely requested and was denied certain financial records. Mr. Woods is in the process of disputing these incidents and has an otherwise perfect disciplinary record in his approximately 103 months of service.

[3] Upon reviewing the Government's Opposition brief, undersigned counsel realized he inadvertently misstated Mr. Woods's prior criminal history when he wrote "At that time [of his current sentence], he had only one minor prior criminal conviction in 2011 for attempting to purchase marijuana, for which he served 2.5 years of confinement." Mot. at 4. Undersigned counsel intended to emphasize that Mr. Woods's current conviction relates solely to marijuana, but recognizes that statement, as written, was broader and also unintentionally excluded an earlier marijuana possession charge from 2009 that resulted in probation. Counsel sincerely apologizes for this error. Nevertheless, while the Government's recitation of Mr. Woods's prior criminal history is accurate, it should be afforded little weight for the reasons set forth in the Motion and Reply.

5

courts "consider[] the defendant on that day, not on the day of his offense or the date of his conviction." *Id.; see also United States v. Amerson*, No. 05-CR-0301(JS), 2023 WL 4497767, at *9 (E.D.N.Y. July 12, 2023) (granting compassionate release where "[d]efendant's stellar disciplinary record, in concert with his impressive rehabilitative efforts and low rate of recidivism, assuages concerns regarding Defendant's dangerousness to the community.").

To that end, the circumstances of Mr. Woods's criminal history, even the most serious of his history, should not be a bar to his compassionate release. A number of compassionate release motions have recently been granted to individuals whose crimes are far more violent, egregious, and serious than Mr. Woods's present non-violent marijuana offense in recognition that individuals can still achieve rehabilitation despite troubled pasts. For example, Judge Frederic Block of the Eastern District of New York recently granted compassionate release to a defendant serving multiple life sentences for robbery, drug trafficking, and witness tampering and who had separately committed a violent robbery, sodomy, and rape. *U.S. v. Johnson*, Case No. 1:96-cr-00932, Dkt. No. 200, at 1-4, 13-14 (E.D.N.Y. Oct. 17, 2024) (heavily weighing defendant's older age and citing cases "considering impact of age on recidivism . . . in spite of defendant's violent and egregious criminal history." (citing *U.S. v. Miller*, 92-cr-91, 2024 WL 4107211, at *19 (E.D.N.Y. Sept. 6, 2024)). The Court should also consider the length of Mr. Woods's sentence for non-violent marijuana-related crimes – effectively a life sentence at his age – both in comparison to the shorter sentences of his co-defendants, and in recognition that marijuana is now a largely decriminalized drug in the United States. *See* Mot. at 36-37; *see also U.S. v. Brinkley*, CR 09-60-04, 2021 WL 3708642, at *4 (E.D. Pa. Aug. 20, 2021) (granting compassionate release when considering the "compelling justification" of the disparity "between [defendant's] sentence and the sentence he would receive today"); *Amerson*, 2023 WL 4497767, at *7 (granting compassionate release where

6

defendant "acknowledg[ed] the seriousness of his crimes," but "nonetheless persuasively argue[d] that his . . . sentence of incarceration is harsh and excessive when compared to sentences imposed today for similar crimes.").

Lastly, the Government asserts that in the *three years* since the Court's previous denial of Mr. Woods's release "little has changed" to justify his release now. Opp. Br. at 19. The contention that three years – a significant measure of time by any account – tacked on to six years already served, is not a substantial and sufficient amount of time in which a person can grow, learn, and further rehabilitate themselves is without support. Moreover, at the time of the Court's previous decision regarding Mr. Woods's release, the Court explained that he had only served 41% of his 180-month sentence. Now, Mr. Woods has served over 65% of his total sentence to date, including his good time credit. The length of time that Mr. Woods has already served certainly promotes a respect for the law, reflects the seriousness of his marijuana related crime, and provides just punishment for the same. *See* § 3553(a)(2)(A).

Mr. Woods is far more than his past decisions, and his story neither starts nor ends with the conduct that led to his incarceration. As of today, this Court can ensure that Mr. Woods's story does not end in prison, and that, as the support letters from loved ones attest, he is returned to the community where he will be reunited with his devoted family as a law-abiding member of society.

## II. **CONCLUSION**

For the extraordinary and compelling reasons presented herein and in the underlying Motion, Mr. Woods respectfully requests that this Court grant a compassionate release and/or reduce his sentence to time served.

Dated: February 4, 2025

Respectfully submitted,

*/s/ Evan K. Jacobs*
Evan K. Jacobs (PA ID 314126)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
Email: evan.jacobs@morganlewis.com

*Counsel for Allen Woods*

**CERTIFICATE OF SERVICE**

  I, Evan K. Jacobs, do here certify that on the 4th day of February 2025, I electronically filed this document with the Clerk of the Court CM/ECF system and provide this Motion via CM/ECF to the Assistant United States Attorney and Attorney to be Noticed in this case.

  I also certify that on the 4th day of February 2025, I mailed this document in the United States Postal Mail to Defendant Allen Woods at: Allen Woods, Reg. No. 44691-066, FCI Hazelton Federal Correctional Institution, P.O. Box. 5000, Bruceton Mills, WV 26525.

                */s/ Evan K. Jacobs*
                Evan K. Jacobs

1